**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**ALFRED F. CATINO,**

        **Petitioner,**

    **v.**                              **CIVIL ACTION NO. 1:07cv9**
                                                 **(Judge Keeley)**


**WARDEN JOYCE FRANCIS, et al.,**

        **Respondents.**


## REPORT AND RECOMMENDATION

### I.  BACKGROUND

On January 22, 2007,  the *pro se* petitioner, Alfred F. Catino, an inmate at FCI Gilmer in

Glenville, West Virginia,  filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241,

seeking, among other things, restoration of twenty-seven (27) days  of  good time that he lost through

a disciplinary hearing.  On February 5, 2007, the petitioner paid the required $5.00 filing fee. By

Order entered on March 15, 2007, the Court directed the respondent to show cause why the petition

should not be granted.  On April 16, 2007, the respondent filed a response and on May 14, 2007, the

petitioner filed a reply.  This matter is pending before me for an initial review and Report and

Recommendation pursuant to LR PL P 83.09.

### II.  FACTS

On August 25, 2005, an incident report was prepared by Marsha Huff ("Huff"), a teacher at

FCI Gilmer, charging the petitioner with a violation of Prohibited Act Code 216A,[1] giving or offering an official or staff member a bribe, or anything of value. (Doc. 7-3, pg. 1). The report indicates that on August 19, 2005, the petitioner was called to the Lieutenant's Office where a Lieutenant Proffitt ("Proffitt") and Huff spoke with him about a Thank You card sent to Huff by the petitioner's daughter. The petitioner was counseled on the inappropriateness of any contact between an inmate's family and staff. The report continues that on August 24, 2005, the petitioner went into the Education Department and asked to speak with Huff. The petitioner then asked Huff, "If you won a raffle ticket to New York City, all expenses paid for one week, would you take it?" Huff replied, "Excuse me?, and the petitioner repeated the question. Huff replied that she would have to enter a raffle before she could win, and the petitioner said, "Yes, but suppose some's [sic] been putting your name in every week. Would you take it?" Huff then said, "ummm, I don't think so, I have already been to New York." The report concludes by indicating that Huff got the impression that her name had already been entered or would be entered into the raffle by someone in the petitioner's family, and the petitioner had direct knowledge of it. Id. The petitioner was then placed in the Special Housing Unit ("SHU") pending an investigation into attempting to give a staff member anything of value. (Doc. 7-3, p. 9). A copy of the incident report was delivered to the petitioner on August 25, 2005, at 4:14 p.m. (Doc. 7-3, p. 1).

At the time the investigating officer, J. Robinson ("Robinson") delivered the incident report to the petitioner, he advised him of his rights including his right to remain silent at all stages of the

---

[1] 28 C.F.R. § 541.13 contains a list of prohibited acts and disciplinary scale. Table 3 of that section sets forth Prohibited Act 216: "Giving or offering an official or staff member a bribe, or anything of value." Pursuant to 28 C.F.R. § 514.13(b), aiding, attempting or planning to commit any prohibited is considered the same as a commission of the offense itself. However, the letter "A" is combined with offense code.

disciplinary proceeding. (Doc. 7-3, p. 2). The petitioner elected to make the following statement, "That was a general conversation. I asked her if she had ever been to New York City. We talked and had a laugh then I said good night and that was the end of it. Mrs. Ware heard the conversation that we had." (Id.). Based on the information contained in the Incident Report and the memorandum from Proffitt attached to the incident report, Robinson concurred that the petitioner was properly charged, and the incident was referred to the Unit Disciplinary Committee ("UDC") for further disposition. (Id.). Given the severity of the charges, the UDC referred to matter to the Disciplinary Hearing Officer ("DHO") with a recommendation that the petitioner receive the maximum sanctions if he had a history of similar behavior. (Doc. 7-3, p. 3).

The DHO" hearing was held on September 15, 2005. The DHO found that the petitioner had willfully violated Code 216A of the Inmate Discipline Policy, Making Plans to Give a Staff Member Anything of Value. The DHO sanctioned the petitioner to 30 days of disciplinary segregation and disallowed 27 days of Good Conduct Time. The DHO report was delivered to the petitioner on September 28, 2005. (Doc. 7-3, pp. 6-8).

The petitioner then appealed to the appropriate Regional Office and Office of General Counsel, where a final decision denying his appeal was entered on February 1, 2006. (Doc. 1, p. 13). Thereafter, the petitioner filed the instant §2241 petition.

### III. CONTENTIONS OF THE PARTIES

The petitioner raises the following grounds in his Application for Habeas Corpus:

(1) the DHO was predisposed to finding him guilty;

(2) the hearing was not fair and impartial;

(3) he was charged with violating a prohibited act code that does not exist; and

(4) he did not commit the violation.

The respondent argues that the petition should be denied because:

(1) the petitioner was provided all of the Due Process Rights required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974) regarding the disciplinary hearing;

(2) the petitioner's assertion that he was charged with a violation that does not exist is without merit; and

(3) The evidence relied upon by the DHO was sufficient for a finding of guilt.

## IV.  ANALYSIS

**A.  Due Process**

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. Amend. V and XIV, §1.  A liberty interest is involved in the instant case as Cuevas was denied good time credit. See Young v. Kann, 926 F.2d 1396, 1399 (3rd Cir. 1991 (a federal prisoner "has a constitutionally protected liberty interest in good time credit").

In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court addressed the due process that must be provided during a prison disciplinary proceeding.  According to the Supreme Court, due process requires as follows:

(1)     giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

(2)     providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

(3)     allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

(4)     permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from

4

staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

(5)     providing impartial fact finders.

Id. at 564-571.   The information before the Court reveals that Cuevas was provided due process as contemplated by Wolff.

First, the petitioner received written notice of the charges at least 24 hours in advance of the DHO hearing.  More particularly, the petitioner received a copy of the incident report on August 25, 2005, and the DHO hearing was on September 15, 2005.

Second, the petitioner was provided a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary action.  The DHO report, dated September 26, 2005, notes that the specific evidence relied upon to support the finding that he willfully violated code 216A was the eyewitness account of Huff.  In addition, the report explains the reason for the disciplinary action. More specifically, the report states that

> "[t]he action/behavior on the part of any inmate to attempt to give anything of value to a staff member, poses a serious threat to the ability of staff to protect other inmates and the public and uphold the Bureau's correctional management responsibilities.  To hold you accountable for your behavior in this instance, the DHO has sanctioned you to 30 days Disciplinary Segregation and Disallow 27 days Good Conduct Time.  The DHO hopes that these sanctions convince you to abide by all institutional rules and regulations and will emphasize to you that this type of behavior will not be tolerated.

(Doc. 7-3, pp. 7-8).

Third, the petitioner was advised of his right to call witnesses and present documentary evidence. While he did not produce any evidence, J. Ware, the witness he requested, appeared and testified.  However, her testimony could not corroborate any portion of the petitioner's version of the

August 24, 2005 conversation between the petitioner and Huff, and directly contradicted at least one portion.[2]

Fourth, the petitioner waived his right to an inmate representative, and finally, the petitioner was provided an impartial decision-maker. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.[3] The petitioner alleges that the DHO was predisposed to finding him guilty, but provided no independent evidence to support his bald accusation. Based upon the record before the Court, the undersigned finds that the DHO report does not reveal any bias and that there is no justification for finding the DHO was biased.

Not only was the petitioner provided all the due process rights required by Wolff, the findings made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act Code 216A. The Supreme Court held in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.
>
> In reaching her decision, the DHO considered the eyewitness account of Huff, who provided

---

[2]As set forth in the DHO report, Ware stated, "I never heard that part of the conversation about new York and winning a trip. We were not laughing and joking about anything." (Doc. 7-3, p. 6).

[3]See 28 C.F.R. § 541.16(b).

a written testimonial in the Incident Report, as well as the Incident report and Investigation, the Memorandum from Huff, the investigating officer, and the testimony of Ware, the other teacher who was present at the time of the incident. After considering all of the evidence the DHO found that the petitioner had willfully violated code 216A, Making Plans to Give a Staff Member Anything of Value. Although the petitioner denied his guilt and stated that he was joking with a staff member, the DHO considered his statement and noted that: "that type of conversation is highly inappropriate between an inmate and staff member. Your extensive questions concerning the all expense paid trip to New York City' appeared as though you were attempting to determine if the staff member would be agreeable to this inappropriate action." (Doc. 7-3, p. 7). As previously noted, it is not the Court's prerogative to make an independent assessment of the credibility of the witnesses or weigh the evidence. So long as there is evidence to support the DHO's determination, it must stand. <u>See</u> <u>Superintendent</u> at 455-56. Here, the testimony and documents considered by the DHO clearly provided "some evidence" from which a rational conclusion could be drawn that the petitioner committed the act as charged.[4]

## V. __RECOMMENDATION__

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition be

**DENIED and DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this

---

[4]The petitioner alleges in both his petition and in his reply that the Incident Report charged him with violation of 216A - Giving or offering an official or staff member a bride, or anything of value. He first argued that no such code violation exists and then complains that this summary of the violation did not adequately advise him that he was actually charged with making plans to offer a staff member a bribe, or anything of value. As previously noted, 28 C.F.R. § 514.13(b),establishes that aiding, attempting or planning to commit any prohibited is considered the same as a commission of the offense itself. However, the letter "A" is combined with offense code. Therefore, the plaintiff was properly advised of the charges against him.

Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: May 27, 2008

      /s/ James E. Seibert
      JAMES E. SEIBERT
      UNITED STATES MAGISTRATE JUDGE